UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|   |   |
|---|---|
| KAWASAKI KISEN KAISHA, LTD., | |
| Plaintiff, | **OPINION** |
| v. | Lead case: Civ. No. 12-5302 (WHW) |
| COSCO CONTAINER LINES CO., LTD., MEGA SHIPPING and FORWARDING, LTD., FIRST CONTINENTAL INTERNATIONAL, (NJ) INC., and WORLD WIDE LOGISTICS, CO., LTD., | Member case: Civ. No. 12-7142 (WHW) |
| Defendants. | |

**Walls, Senior District Judge**

This case concerns 100 palletized drums of P-Toluenesuflonyl Isocyanate ("PTSI") that was shipped from Qingdao, China, to Newark, New Jersey. Plaintiff Kawasaki Kisen Kaisha ("K Line") is the carrier that brought an interpleader action to determine the owner of this cargo and to recover expenses. Defendant First Continental International, Inc. ("FCI") moves for summary judgment. Under Federal Rule of Civil Procedure 78, the motion is decided without oral argument. FCI's motion for summary judgment is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts viewed in the light most favorable to the non-moving party are: Defendant FCI is a New Jersey corporation in the business of buying and selling chemicals. FCI's Statement of Undisputed Material Facts ("FCI Facts") ¶ 1, ECF No. 25; K Line's Declaration ("K Line

1

Facts") ¶ 1, ECF No. 30. In 2011, FCI purchased 100 palletized drums of PTSI, which is a Class 6.1 toxic hazardous material, from Pingyuan Yongheng Chemical Company in China. FCI Facts ¶ 2; K Line Facts ¶ 2; Valenti Aff. ¶ 6 (ECF No. 27).

Plaintiff K Line is the ocean carrier that transported the PTSI from China to New Jersey. Compl. ¶ 4; FCI Facts ¶ 13; K Line Facts ¶ 13. The PTSI was loaded into container no. KKFU 1367468 ("the Container"). Compl. ¶ 4; FCI Facts ¶ 7; K Line Facts ¶ 7. The vessel chartered by K Line to transport the Container was owned by Defendant Cosco Container Lines Company ("Cosco"). Compl. ¶ 4; K Line Facts ¶ 17.

On February 17, 2012, the Container was discharged from the vessel at Maher Terminal in Port Newark, New Jersey. FCI Facts ¶ 15; K Line Facts ¶ 15. An allegation of leakage arose from vessel owner Cosco. K Line Facts ¶ 17. The Container and fourteen other containers were segregated for inspection and cleaning. FCI Facts ¶ 18; K Line Facts ¶ 18. On that same day, representatives of various governmental agencies, including the New Jersey Department of Environmental Protection ("NJDEP"), Union County Hazmat Team, and Elizabeth Fire Department, arrived at Maher Terminal to investigate. FCI Facts ¶ 19; K Line Facts ¶ 19; Valenti Affidavit, Ex. C ("NJDEP Report"). Cosco hired Atlantic Response, Inc., to off-load the shipping containers to check the drums for leakage. NJDEP Report at 3, ¶ 6. K Line hired Richard Allen of Marine Surveys Company to inspect the cargo as well. FCI Facts ¶ 37; K Line Facts ¶ 37. None of the drums showed evidence of punctures or holes. K Line Facts ¶ 28; FCI Facts ¶ 28; NJDEP Report at 3, ¶ 6. But K Line and FCI disagree as to whether there is evidence of PTSI leakage from the Container. *Compare* FCI Facts ¶¶ 21-23; K Line Facts ¶¶ 21-23. Both sides have submitted numerous inspection reports and lab test results that speak to the content

and the source of the leakage. *See e.g.*, NJDEP Report; Exs. H,I, J, Valenti Aff.; Exs. 3, 4, Wolfson Decl.

A portion of the PTSI is currently located in warehouse storage in East Orange, New Jersey. FCI Facts ¶ 74; K Line Facts ¶ 74. By stipulation between FCI and K Line, FCI has been permitted to sell the PTSI and set the proceeds aside in escrow. FCI Facts ¶ 75; K Line Facts ¶ 75.

Plaintiff K Line filed suit on August 23, 2012, under Federal Rule of Civil Procedure 22 to determine the owner of the cargo and to recover expenses payable to K Line related to the alleged leakage. Compl. ¶ 1. Defendant FCI moves for summary judgment on the grounds that the cargo in the Container did not leak or cause any damage, so K Line is not entitled to maintain a lien on the goods. FCI Br. at 1 (ECF No. 28). FCI urges the Court to dismiss the Complaint against FCI and to order the immediate release of the cargo and the proceeds of their sale to FCI. *Id.* at 2. On April 30, 2013, this case was consolidated with *First Continental International (NJ) Inc. v. 100 Drums P-Toluenesulfonyl Isocyanate (PTSI), in rem, Kawasaki Kisen Kaisha, Ltd. and "K" Line America, Inc., in personam,* case no. 12-7142, which concerns the same cargo and common questions of law and fact. ECF No. 36.

## STANDARD OF REVIEW

Summary judgment is appropriate when the movant shows that "there is no genuine issue as to any material fact and [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect

the outcome of the suit. *See Anderson*, 477 U.S. at 248. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (quoting *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue of fact for trial. *See Anderson*, 477 U.S. at 249. In so doing, the court must construe the facts and inferences in the light most favorable to the non-moving party. *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002).

## DISCUSSION

Defendant FCI moves for summary judgment on the grounds that K Line's interpleader action is improper. K Line filed this interpleader action to determine the owner of the cargo and to recover the expenses related to the carriage of the cargo. Compl. ¶ 1. Federal Rule of Civil Procedure 22 provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a)(1). The interpleader action is meant to allow "'a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding.'" *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009) (quoting 7 Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1704 (3d ed. 2001)). Interpleader allows a stakeholder to file suit, deposit the property with the court, and withdraw from the proceedings. *Id. (*citing *Metro Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007)). The competing claimants are then left to litigate between themselves while the stakeholder is discharged from any further liability with respect to the subject of the dispute. *Id.* The typical interpleader action

proceeds in two stages. *Id.* In the first stage, the court determines whether the interpleader complaint was properly brought and whether to discharge the stakeholder from further liability to the claimants. *Id.* (citations omitted). In the second stage, the court determines the respective rights of the claimants to the interpleaded funds. *Id.* (citations omitted). *See also Guardian Life Ins. Co. of Am. v. Estate of Cerniglia*, 446 F. App'x 453, 455 (3d Cir. 2011).

FCI asserts that K Line's interpleader action is improper because the drums of PTSI did not leak, so K Line had no right to seize the goods and impose a lien. FCI Br. at 2. As a result, K Line is not entitled to interpleader relief because it does not have clean hands and is not an "innocent stakeholder." *Id.* at 13-14 (citing *Hovis*, 553 F.3d at 263-65). FCI further contends that the interpleader action is improper because there is no controversy over the ownership of the PTSI: the cargo belongs to FCI. *Id.* at 14.

The Court concludes that whether the PTSI leaked from the Container is a material fact in dispute and precludes summary judgment. Both sides agree that a carrier may legally assert a lien against cargo that damages the vessel or other cargo. *See* Gilmore & Black, *The Law of Admiralty* (2d ed.), § 9-20 n.103; FCI Br. at 9; K Line's Br. at 8; Reply Br. at 3 (ECF no. 32). This case hinges on whether PTSI leaked from the Container and damaged other cargo. *See Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294 (3d Cir. 2012) ("A dispute is material if it could affect the outcome of the case.") (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). Unsurprisingly, each side submits conflicting evidence to support its own position.

To show that the drums of PTSI did not leak, FCI has submitted various reports and photographs. The NJDEP Report observed "a small amount of the unknown white material along the rear floor and at the base of one of the drum pallets," but the source of the spill could not be

identified from the visual inspection. NJDEP Report at 2. "None of the drums had any evidence of damage or puncture holes." *Id.* The NJDEP concluded: "Investigation revealed that a spill of isocyanate occurred; the exact container that leaked could not be determined." *Id.* at 3. The Field Activity Report by Atlantic Response, a company hired by vessel owner Cosco, similarly concluded that "all drums were removed and inspected for leaks" and "[n]o leaking drums were found." Ex. H, Valenti Aff. A report from Marine Surveys Company dated March 2, 2012, describes its investigation conducted on February 17, 18 and 24, 2012. Ex. J, Valenti Aff. This report echoes the conclusion of other reports: there was residue indicating leakage but there was no evidence that the drums containing PTSI were leaking. *Id.* at 3-4. But the Marine Surveys report ends on an inconclusive note:

> We are not in a position at this time to determine why none of the drums were found to be leaking and/or showing loss of product, however we are of the opinion that the product residue and staining of the lower tier containers had originated from container KKFU 1367468.

*Id.* at 7. A chemical analysis report dated February 24, 2012 shows only presence of chlorobenzene, which FCI says is a chemical used in cleaning. FCI Facts ¶ 36; Ex. I, Valenti Aff. Finally, on March 23, 2012, there was a joint inspection of the PTSI drums where each was weighed on a certified scale in order to determine whether there was PTSI leakage. FCI Facts ¶ 62; Ex. R, Valenti Aff. The gross weight of the drums on that date was 22,147 kilograms, which closely matched the weight on the shipper's packing list of 22,150 kilograms. *Id.* Based on this weighing, FCI urges "it did not appear that any measurable volume of PTSI leaked from the drums." FCI Facts ¶ 67.

Plaintiff K Line maintains that there is evidence of leakage of PTSI from the Container. K Line Br. at 1. K Line has submitted an email from Richard Allen from Marine Surveys Company dated March 7, 2012. Ex. 2, Wolfson Decl. The email describes an examination that

6

was conducted the day before at Maher Terminal and concludes that the product residue "found on containers though out [sic] the hatch originated from container KKLU 136746-8." *Id.* A chemical analysis report from Stillwell & Gladding, a company that conducts laboratory tests, analyzed the sample that was taken from the undercarriage of the Container. The report concludes the substance examined *could* be related to PTSI:

> The resulting ion current chromatogram was carefully examined for the presence of [PTSI]. <u>Although it was not detected as an in tact [sic] molecule, 2 modified compounds of it were detected</u>. . . .Since the sample that was submitted for analysis was a contaminated container scrapings [sic] that were probably exposed to other environmental conditions, it could be expected that [PTSI] would undergo some changes through reaction with exposed materials. <u>The obseved [sic] compounds in the present analysis are, therefore, relatable to to [sic] suspected initial contamination by [PTSI]</u>.

Ex. 3, Wolfson Decl. (emphasis added). Lastly, a survey report from Marine Surveys Company dated August 2, 2012, details a re-examination of the Container and observes that three of the drums had signs of white residue, while the rest of the drums were clean. Ex. 4, Wolfson Decl.

The Supreme Court has said that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 247-48 (1986). Here, it does not appear that one side or the other is telling a story that is wholly unsupported by the record. The Court is mindful that at the summary judgment stage, the Court's role is not to weigh evidence and determine the truth of the matter, but to determine whether there is a genuine issue of fact for trial. *Id.* at 249. Whether PTSI leaked from the Container and damaged other cargo is such an issue and it controls the outcome of this case. Summary judgment at this stage is improper.

## CONCLUSION

Defendant FCI's motion for summary judgment is denied.

June 12, 2013

                                    **/s/ William H. Walls**

                                    United States Senior District Judge